UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


EDNIRA MONTOYA, JOSE FLORES, and
ALEJANDRO MONTES, individuals,

Plaintiffs,

v.

ROSE CITY TAQUERIA LLC, a domestic limited
liability company, PNW EATS, LLC, a domestic
limited liability company, and VERENICE
MENDOZA, an individual,

Defendants.

Case No. 3:21-cv-1889-YY

FINDINGS AND
RECOMMENDATIONS


**FINDINGS**

Plaintiffs Ednira Montoya, Jose Flores, and Alejandro Montes bring this lawsuit against

defendants Rose City Taqueria LLC, PNW Eats LLC, and Verenice Mendoza asserting claims

for failure to pay minimum and overtime wages, employment discrimination, and retaliatory

termination in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and

Oregon wage and hour laws.  Am. Compl. ¶¶ 80–102, ECF 5.

Plaintiffs have filed a Motion for Default Judgment (ECF 17) and a Motion for Attorney

Fees (ECF 22), which should be granted for the reasons set forth herein.

## I. Procedural Background

Plaintiffs filed this case on December 31, 2021. ECF 1. On February 22, 2022, Verenice Mendoza, who is the registered agent for PNW Eats LLC and one of the managing members of Rose City Taqueria LLC, was served with the summons, complaint, and civil cover sheet for this action. Decl. Service, ECF 4; Allen-Sailer Decl. ¶¶ 34–35, ECF 18. On March 2, 2022, plaintiffs filed an Amended Complaint (ECF 5), which contained minor factual revisions to the original Complaint, and mailed the Amended Complaint to defendants' last known addresses that same day. Allen-Sailer Decl., ECF 8. To date, defendants have not filed an Answer or otherwise appeared in this matter.

On March 29, 2022, plaintiffs filed a Motion for Entry of Default (ECF 7), and the Clerk of the Court issued an Entry of Default on March 30, 2022 (ECF 9). Plaintiffs filed their Motion for Default Judgment on June 10, 2022 (ECF 17), and submitted a Motion for Attorney Fees (ECF 22) on August 3, 2022, as well as additional supplemental materials on September 9 and October 20, 2022. Plaintiffs served copies of all of these motions and supporting materials on defendants. *See* ECF 24, 28, 31.

## II. Subject Matter Jurisdiction

For this court to enter a default judgment, it must first determine that it has subject matter jurisdiction over this action. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is presumed that a claim lies outside of the court's jurisdiction, and the party asserting jurisdiction bears the burden of establishing otherwise. *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3); *see also Fiedler v. Clark*, 714 F.2d 77,

78–79 (9th Cir. 1983) (recognizing that the court may *sua sponte* dismiss an action if it finds that subject matter jurisdiction is lacking).

Here, the court has jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiffs' FLSA claims arise under the laws of the United States. The court has supplemental jurisdiction over the Oregon law claims pursuant to 28 U.S.C. § 1367 because the state law claims involve the same case and controversy as the federal claims at issue. *See Bobadilla-German v. Bear Creek Orchards, Inc.*, 641 F.3d 391, 394 (9th Cir. 2011) (finding supplemental jurisdiction existed for state minimum wage law claims where plaintiffs had asserted federal migrant and seasonal worker protection act claims).

## III.     Personal Jurisdiction

A district court also has an affirmative duty to determine whether it has personal jurisdiction over a defendant before entering a default judgment. *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999). "A judgment entered without personal jurisdiction over the parties is void." *Id*. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [defendants]." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)).

With respect to corporations, the Supreme Court has recognized the place of incorporation and principal place of business as paradigmatic bases for jurisdiction. *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* "These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.*

As to individuals, the Supreme Court has recognized that the court exercises jurisdiction over individuals domiciled within the state. *Milliken v. Meyer*, 311 U.S. 457, 463 (1940) ("The state which accords him privileges and affords protection to him and his property by virtue of his domicile may also exact reciprocal duties."). Oregon also recognizes jurisdiction over individuals who are served within the state. Or. R. Civ. P. 4(a)(1).

Here, the principal place of business for defendants Rose City Taqueria LLC and PNW Eats LLC was Oregon. Allen-Sailer Decl. ¶ 8, ECF 8; *see*, *e.g.*, Flores Decl., Ex. 1, ECF 19-1 (earnings statement showing Rose City Taqueria LLC's address as 7007 N. Fessenden St., Portland, Oregon 97203). The business entity defendants were also registered in Oregon. *Id.* ¶¶ 4–5. Defendant Verenice Mendoza is an Oregon resident. Am. Compl. ¶ 9, ECF 5. Additionally, Mendoza was personally served with the summons and complaint in Oregon. Decl. Service, ECF 4. Accordingly, this court exercises personal jurisdiction over all defendants.

## IV.   Service of Process

Before entering a default judgment, the court must "assess the adequacy of the service of process on the party against whom default is requested." *Bank of the West v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). "[I]n the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has . . . waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007).

Under Federal Rule of Civil Procedure 4(h)(1)(B), service may be made on a limited liability company by "delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized  by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also

mailing a copy of each to the defendant[.]"  Rule 4 also permits service on a limited liability company in the manner prescribed by the law of the state in which the district court sits or where service is made.  FED R. CIV. P. 4(h)(1)(A), 4(e)(1).  Under Oregon Rule of Civil Procedure 7D(3)(c), a limited liability company is properly served "[b]y personal service or office service upon a registered agent, manager, or (for a member-managed limited liability company) member of a limited liability company."

Plaintiffs have filed an affidavit of service showing that on February 22, 2020, defendant Mendoza was personally served in her individual capacity.  Decl. Service, ECF 4.  Defendant Mendoza was also served as the registered agent for PNW Eats LLC and as a managing member of Rose City Taqueria LLC.  *Id.*  Because Rose City Taqueria LLC is a member-managed LLC, Rose City Taqueria LLC Art. Incorporation (May 06, 2015), service on Mendoza constitutes service on the LLC.  *See* OR. R. CIV. P. 7D(3)(c)(i).  Additionally, the Amended Complaint was mailed to defendants' last known addresses—Mendoza's residence, and the restaurant where the two entity defendants have been conducting business.  Allen-Sailer Decl. ¶ 8, ECF 8.  Thus, plaintiffs have established valid service in this case.

## V.    Damages

### A.    Legal Standard Regarding Damages

Upon entry of default, the factual allegations in the complaint are taken as true, except those allegations relating to damages.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  A plaintiff must provide proof for the damages sought.  *TWC Int'l, Inc. v. Greene*, 889 F.2d 1096 (9th Cir. 1989) (affirming district court determination of damages based on written affidavit and oral testimony); *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir. 1987).

## B.      Claims 1 and 2 – Overtime

Plaintiffs claim damages for defendants' violations of the FLSA (29 U.S.C. §§ 206, 207) and Oregon overtime laws (O.R.S. § 653.261) between June 1, 2020, through September 7, 2021.[1]  Am. Compl. ¶¶ 80–81, 83–84, ECF 5; Mot. Default J. 6, ECF 17.[2]  The FLSA mandates overtime wages for hours that an employee works exceeding 40 hours per week.  29 U.S.C. §§ 206(a)(1); 207(a)(2)(C).  Oregon law also requires overtime wages for hours exceeding 40 hours per week.  O.R.S. § 653.261.  Both the FLSA and Oregon law require employers to pay overtime wages of 1.5 times the employee's regular hourly rate of pay.  29 U.S.C. § 207(a)(1); O.R.S. § 653.261.

The FLSA permits employees to recover unpaid overtime compensation and "an additional equal amount as liquidated damages" for violations of the above provisions.  29 U.S.C. § 216(b).  Under Oregon law, if an employer fails to pay an employee less than the wages to which the employee is entitled, the employer is liable for the full amount of wages, less any amount the employer actually paid the employee.  O.R.S. § 653.055(1)(a).  Additionally, the employee is entitled to penalty wages of eight times the employee's hourly wage rate per day, up to a maximum of 30 days.  O.R.S. §§ 653.055(1)(b), 652.150.

---

[1] Flores also asserts a minimum wage claim based on defendants' failure to compensate him for the hours he worked from June 16, 2021, to June 30, 2021, after his paycheck for that time period was returned for insufficient funds.  Am. Compl. ¶¶ 51–58, ECF 5; *see* O.R.S. § 653.025.  However, Flores acknowledges that this claim is duplicative of his claim for a dishonored check and chooses to seek compensation under that theory of liability.  Mot. Default J. 7, ECF 17 ("Plaintiff Flores's damages for this violation [of Oregon minimum wage law] are duplicative of those fore (sic) O.R.S. § 652.195(1) ("Liability for dishonored check for payment of wages") and are discussed in Section 2.").

[2] Although plaintiffs worked for defendants between 2017 and 2021, in their motion, they explain that they are "focusing on the time period from June 1, 2020, through their termination" on September 7, 2021.  Mot. Default J. 6, ECF 17.

An employer may be liable for more than one penalty where the penalties pertain to "separate statutory schemes" and are "separate remedies, each with its own purpose." *Hurger v. Hyatt Lake Resort, Inc.*, 170 Or. App. 320, 327 (2000), *rev. denied,* 331 Or. 583 (2001). Here, plaintiffs may recover under both the FLSA and Oregon wage and hour statutes because the FLSA seeks to compensate workers for the damages incurred by withheld wages, *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945), while the Oregon statutes are intended to penalize employers for delay in paying due wages, *Nordling v. Johnston*, 205 Or. 315, 326 (1955).

Plaintiffs have proffered evidence that defendants failed to pay them overtime wages for the period between June 1, 2020, and September 7, 2021. Flores describes working seven days a week, approximately 66 hours a week, but without overtime pay. Flores Decl. ¶¶ 6–7, ECF 19. Montes worked six days a week, approximately 54 hours a week, but without overtime pay. Montes Decl. ¶¶ 6–7, ECF 20. Montoya worked seven days a week, approximately 55 hours per week, and also without overtime pay. Montoya Decl. ¶¶ 6–7, ECF 21. In addition to their sworn declarations, plaintiffs have offered sample time cards and paychecks to corroborate their claims. *See, e.g.*, Montoya Decl., Ex. 1, at 3, ECF 21-1 (paycheck showing $1,622 in paid wages, which at $15/hr. calculates to 108 hours in a 14-day pay period); Flores Decl., Ex. 2, ECF 19-2 (time card showing single and double shifts exceeding 40 hours in a week); Montes Decl., Ex. 1, ECF 20-2 (same).

Again, for failure to pay overtime wages, defendants are liable under the FLSA for liquidated damages equal to the unpaid overtime wages, and under Oregon law for the maximum permitted penalty, which is plaintiffs' hourly wage rates multiplied by 8 hours per day for no more than 30 days. During the relevant period, Montoya's hourly wage rate was $15, Montoya

Decl. ¶ 4, ECF 21, Flores' hourly wage rate was $17 and $18.81[3], and Montes' hourly wage rate was $16 and $17.  Allen-Sailer Decl., Exs. 1–3, ECF 18-1, 18-2, 18-3.  Using timesheets and paychecks, and estimated numbers where no documentation exists, plaintiffs have calculated that they are entitled to unpaid overtime wages in the following amounts:

Montoya:  439.71 documented overtime hours (for 31 weeks from January 16, 2021, to February 28, 2021, and March 15, 2021, to September 7, 2021) and 528.23 estimated overtime hours (for 35 weeks from June 1, 2020, to January 15, 2021, and March 1 to March 14, 2021) totaling 967.94 unpaid overtime hours at $7.50 per hour (half of Montoya's hourly wage rate of $15) for a total of $7,259.56 in unpaid overtime wages.  Allen-Sailer Decl. ¶¶ 4–9, ECF 18; *id.*, Ex. 1, ECF 18-1.

Flores:  Eight weeks and four days (i.e., 8.57 weeks) of estimated overtime hours (between June 1 and July 31, 2020) with an average of 25.73 hours of overtime per week, totaling 220.51 hours at $8.50 per hour (half of Flores' hourly wage rate of $17) for a total of $1,874.30.[4]  Also, 57.43 weeks of documented overtime hours (between August 1, 2020, and September 7, 2021), including (1) 43.43 weeks of estimated overtime hours at an average of 25.73 hours of overtime per week, at $9.41 per hour (half of Flores' hourly rate of $18.81) for a total of $10,515.24, and (2) 14 weeks of documented overtime hours (2 weeks between May 1 and May 15, 2021, and 12 weeks between June 14 and September 5, 2021) totaling 317.07 hours,

---

[3] In his declaration, Flores describes that he was paid $17 in June 2020 and then received a raise to $19 two months later.  Flores Decl. ¶ 2, ECF 19.  However, his paychecks still reflected he was being paid $17, and he received an additional check for $500 per month.  *Id.*  Flores' spreadsheet reflects that the average hourly wage rate, including the $500 extra payments actually equaled an hourly wage rate of $18.81.

[4] Flores' spreadsheet indicates this amount is $1,874.80.  Allen-Sailer Decl., Ex. 2, at 3, ECF 18-2.  However, when 8.57 is multiplied by 25.73 and then $8.50, the total is $1,874.30.

at $9.41 per hour for a total of $2,983.63. Allen-Sailer Decl. ¶¶ 10–17, ECF 18; *id.*, Ex. 2, ECF 18-2. These figures support an award to Flores' of $15,373.17.[5]

Montes: 354.88 estimated overtime hours (between June 1 and December 31, 2020) with an average of 13.43 hours of overtime per week, at $8 per hour (half of Montes' hourly wage rate of $16) for a total of $2,839.04. Also, 448.87 estimated overtime hours (between January 1 and September 6, 2021) with an average of 13.43 hours of overtime per week, at $8.50 per hour (half of Montes' hourly rate of $17) for a total of $3,815.40. Additionally, 59.05 documented overtime hours between June 1 and December 31, 2020, at $8 per hour, totaling $472.40, and 6.08 documented overtime hours between January 1, 2021, and September 6, 2021, at $8.50 per hour, totaling $51.68. These figures support plaintiffs' request for $7,178.53 for plaintiff Montes.[6] Allen-Sailer Decl. ¶ 17–22, ECF 18; *id.*, Ex. 3, ECF 18-3.

The uncontroverted evidence supports plaintiffs' calculations, and plaintiffs' calculations are supported by the law. Therefore, under the FLSA, defendants are liable for the claimed overtime wages plus the same amount in liquidated damages, and under Oregon law, defendants are liable to Montoya for $3,600 ($15 x 8 x 30), to Flores for $4,514.40 ($18.81 x 8 x 30), and to Montes for $4,080 ($17 x 8 x 30). *See* O.R.S. § 652.150 (multiplying hourly rate by 8 hours for 30 days).

---

[5] This amount is more than the $14,838.20 that Flores requested in the motion for default judgment. However, in response to an inquiry from the court, plaintiffs' counsel has clarified that the 260.80 hours in the spreadsheet is a clerical error; the correct total for the 14 weeks of documented overtime is 317.07 hours, which is the sum of the numbers reflected in the spreadsheet. Allen-Sailer Decl., Ex. 2, at 2-3, ECF 18-2.

[6] There is a one cent discrepancy in the requested amount and the sum of the figures in this paragraph that is likely attributable to the use of rounded figures in the spreadsheets and plaintiffs' use of exact values in their calculations.

In sum, for their unpaid overtime claims, Montoya is entitled to $18,119.12, Flores is entitled to $34,190.80, and Montes is entitled to $18,437.06.

### C. Claim 3 – Dishonored Check

Flores also seeks damages for a dishonored check. Am. Compl. ¶ 87, ECF 5. Under O.R.S. § 652.195, employers that issue dishonored checks for the payment of wages are liable for the value of the check, plus the greater of $100 or triple the amount of the check, not to exceed $500 more than the amount of the check. O.R.S. § 30.701. Employers are also liable for fees relating to the dishonored check, not to exceed $35. *Id.* Liability is contingent upon the payee of the check sending a written demand to the maker of the check at least 30 days prior to commencing an action to recover the value of the check. O.R.S. § 30.701(2).

Here, on July 5, 2021, defendants issued Flores a check for $2,946 that was dishonored. Am. Compl. ¶ 54, ECF 5. Flores' bank charged a $12 fee for the returned check. Flores Decl., Ex. 4, ECF 19-4. Flores, through his counsel, made a written demand for the value of the check on December 14, 2021. Allen-Sailer Decl. ¶ 36, ECF 18; *id.*, Ex. 6, ECF 18-6. Defendants have not responded to Flores' demand or paid any portion of the dishonored check. Flores Decl. ¶ 12, ECF 19. Defendants are therefore liable for $6,404, which is the sum of the unpaid check ($2,946), statutory damages of $3,446 ($2946 + $500), and a $12 fee for the returned check.

### D. Claim 4 – Untimely Payment of Wages

Plaintiffs allege defendants failed to timely pay wages that were due upon plaintiffs' termination in violation of O.R.S. § 652.140(1). Am. Compl. ¶ 88, ECF 5. Under O.R.S. § 652.140 and § 652.150, employers that fail to pay an employee's outstanding wages by the first business day after their termination incur a penalty of the employee's hourly rate multiplied by eight hours per day until paid, but not exceeding 30 days from the payment due date. Plaintiffs

were terminated on September 7, 2021, and received their final paychecks on September 20, 2021.  Am. Compl. ¶ 69, 76, ECF 5; Montes Decl. ¶ 19, ECF 20.  Defendants are therefore liable for penalties totaling eight hours for 12 days multiplied by each employee's hourly wage rate. This amounts to $1,440 for Montoya, $1,805.76 for Flores, and $1,632 for Montes.  *See* Allen-Sailer Decl. ¶ 25, ECF 18; *id.*, Ex. 4, ECF 18-4.

### E.      Claims 5–8 – Retaliation and Whistleblower Claims

Plaintiffs allege they were terminated because they complained about violations of the FLSA and Oregon wage and hour laws and not being paid wages for work they completed in the last two weeks of August 2021.  Am. Compl. ¶¶ 90–98, ECF 5.  Federal and state statutes prohibit employers from discharging employees for complaining about unpaid wages, 29 U.S.C. § 215(a)(3); O.R.S. §§ 652.355, 653.060, or for good faith reporting of information that shows a violation of a state or federal regulation, O.R.S. § 659A.199.  The FLSA expressly prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).  Failure to pay wages on an employee's scheduled payday constitutes a violation of the FLSA's minimum wage provisions. *Biggs v. Wilson*, 1 F.3d 1537, 1538 (9th Cir. 1993).

"[N]ot all amorphous expressions of discontent related to wages and hours constitute complaints filed" within the meaning of the FLSA.  *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999).  "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). A complaint may be communicated orally, and need not reference a specific statute. *Lambert*, 180 F.3d at 1008.

Under O.R.S. § 659A.199, an internal, verbal complaint to a supervisor about unpaid compensation constitutes a protected wage claim. *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 1000 (9th Cir. 2017) (finding that plaintiff's verbal objection to his supervisor about his employer's failure to pay overtime wages supported a claim under O.R.S. § 659A.199). Similarly, "a demand or request that an employee has against his employer for compensation due and owing for the employee's personal service" is a wage claim under O.R.S. § 652.355. *Id.* at 1002 (finding that same verbal complaint also gave rise to a claim under O.R.S. § 652.355).

Employers found in violation of the FLSA retaliation provision are liable for lost wages, an equal amount in liquidated damages, and attorney's fees and costs. 29 U.S.C. § 216(b). Employers who violate Oregon's retaliation statute are liable for lost wages, noneconomic damages, and reasonable attorney's fees and costs. O.R.S. § 695A.885.

On September 7, 2021, plaintiffs spoke with defendant Mendoza via telephone and complained about the delay in receiving their paychecks, which were scheduled for payment on September 5, 2021. Montoya Decl. ¶ 12–14, ECF 21; Flores Decl. ¶ 14–16, ECF 19; Montes Decl. ¶ 12–16, ECF 20. During the same phone call, in response to plaintiffs' requests for payment, defendant Mendoza terminated plaintiffs' employment. Am. Compl. ¶ 69, ECF 5; Montoya Decl. ¶ 15, ECF 21; Flores Decl. ¶ 17, ECF 19; Montes Decl. ¶ 17, ECF 20. Defendant Mendoza subsequently threatened plaintiffs with legal action if they attempted to seek legal recourse. Montoya Decl. ¶ 17, ECF 21. In threatening to counter-sue plaintiffs, defendant Mendoza demonstrated her understanding that plaintiffs had a legal basis for their wage claim. Plaintiffs have thus shown that they complained about unpaid wages, which are prohibited under

the FLSA, and were discharged for that complaint, triggering 29 U.S.C. § 215(a)(3). Plaintiffs also have shown that they made a protected request to their employer for unpaid compensation, and were terminated as a result of that request, in satisfaction of O.R.S. §§ 652.355, 653.060, and 659A.199.

Plaintiffs have calculated their lost wages using each plaintiff's average weekly income, based on average hours worked per week, hourly wage, and average tips. Allen-Sailer Decl., Exs. 1–3, ECF 18-1, 18-2, 18-3; Montoya Decl. ¶¶ 4–6, ECF 21; Flores Decl. ¶¶ 2–3, 6, ECF 19; Montes Decl. ¶¶ 2–4, 6, ECF 20. Montoya and Flores have calculated their lost wages for the period from their termination to the filing of the motion for default judgment, June 10, 2022. Allen-Sailer Decl. Exs. 1–2, ECF 18-1, 18-2. Montes submitted his resignation on September 4, 2021, to be effective two weeks later on September 18, 2021, but was terminated along with Montoya and Flores on September 7, 2021. Montes Supp. Decl. ¶¶ 1–3, ECF 26. Montes has calculated his lost wages for the period from the date of termination, September 7, 2018, to the effective date of his resignation, September 18, 2021. Allen-Sailer Supp. Decl., Ex. 1, ECF 27-1. Plaintiffs were able to mitigate some of their damages by finding work shortly following their termination; however, their income at these other jobs has not been as high as what defendants had paid them. Montoya Decl. ¶ 20, Ex. 2, ECF 21; Flores Decl. ¶ 21, Ex. 5, ECF 19; Montes Decl. ¶ 23, Ex. 4, ECF 20.

Plaintiffs' calculations appear accurate. Therefore, for their retaliation claims, plaintiffs are entitled to their lost wages and an equal amount in liquidated damages: in total, $26,775.90 for Montoya, $12,792.30 for Flores, and $4,164.44 for Montes. Allen-Sailer Decl. Exs. 1–3, ECF 18-1, 18-2, 18-3; Allen-Sailer Suppl. Decl., Ex. 1, ECF 27-1.

### F.     Noneconomic Damages

Plaintiffs each claim $25,000 for noneconomic damages resulting from their termination, pursuant to O.R.S. § 659A.885.[7]  Mot. Default J. 16, ECF 17.  O.R.S. § 659A.885(3)(a) provides that "[t]he court may award compensatory damages or $200, whichever is greater" for claims made pursuant to O.R.S. § 652.355 and § 659A.199, such as plaintiffs have asserted here.  In interpreting O.R.S. § 659A.885(3), the Oregon Supreme Court has held that "[c]ompensatory damages include both economic and noneconomic damages."  *Hamlin v. Hampton Lumber Mills, Inc.*, 349 Or. 526, 540 n.12 (2011).

Plaintiffs attest that their terminations caused emotional distress, which manifested physically in the form of insomnia, headaches, and weight loss.  Montoya Decl. ¶ 18, ECF 21; Flores Decl. ¶ 19, ECF 19; Montes Decl. ¶ 20, ECF 20.  In light of these repercussions, and based upon examination of awards for noneconomic damages in comparable cases, $25,000 in emotional distress damages for each plaintiff is reasonable.  *See Brown v. Am. Prop. Mgmt. Corp.*, 167 Or. App. 53, 58 (2000) (upholding jury award of $11,500 for noneconomic loss for wage claim retaliation); *City of Portland v. Bureau of Lab. & Indus., 64* Or. App. 341, 342 (1983) *(*upholding award of $15,000 for emotional distress from retaliatory termination).

### G.     Joint Liability

Plaintiffs assert that each defendant is an "employer" as defined in the FLSA and Oregon wage and hour statutes and therefore jointly and severally liable for plaintiffs' claims.  Mot. Default J. 17, ECF 17.  Liability under the FLSA is limited to "employers," which include "any person acting directly or indirectly in the interest of an employer in relation to an employee and

---

[7] Plaintiffs do not seek noneconomic damages based on their FLSA claim.  Mot. Default J. 16, ECF 17.

includes a public agency." 29 U.S.C § 203(d). This definition is interpreted expansively "in order to effectuate the FLSA's broad remedial purposes." *Lambert*, 180 F.3d at 1012 (quoting *Bonnette v. California Health & Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir. 1983)). Multiple "employers" may be simultaneously liable for violations of the FLSA. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 756 (9th Cir. 1979) (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). Individuals who exercise "control over the nature and structure of the employment relationship," or "economic control" over the relationship are "employers," are liable under the FLSA. *Lambert*, 180 F.3d at 1012. The test focuses on the "economic realities of the totality of the circumstances." *Real*, 603 F.2d at 756. The following factors are relevant to that determination: "significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; [the power to] determin[e][ ]salaries; [the responsibility to] maintain [ ] employment records." *Lambert*, 180 F.3d at 1012.

Under the relevant Oregon statutes, an "employer" is "any person who in this state, directly or through an agent, engages personal services of one or more employees," any person who "suffer[s] or permit[s another person] to work," and "any person who in this state, directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed." O.R.S §§ 652.310, 653.010(2), (3), 659A.001(4). Oregon applies the FLSA's economic realities test to determine whether parties are in an employment relationship. *Cejas Com. Interiors, Inc. v. Torres-Liza*ma, 260 Or. App. 87, 103 (2013) (applying economic realities test to O.R.S. § 652); *Taylor v. Werner Enterprises, Inc.*, 329 Or. 461, 468 (1999) (finding that defendant was plaintiff's employer where defendant directed and controlled plaintiff, hired and disciplined plaintiff, and received

plaintiff's driving services).  Membership in a limited liability company does not shield an individual from personal liability for culpable acts, even where those acts are taken on behalf of the LLC.  *Cortez v. Nacco Material Handling Grp., Inc.*, 356 Or. 254, 268 (2014).

Here, plaintiffs allege that defendant Mendoza is a member of Rose City Taqueria LLC and PNW Eats LLC.  Am. Compl. ¶ 9, ECF 5.  Collectively, defendants have operated a restaurant, which employed plaintiffs for cooking, dishwashing, and cashier services.  *Id.* ¶ 10– 11.  Defendant Rose City Taqueria LLC was dissolved in 2018.  Allen-Sailer Decl. ¶ 34, ECF 18.  Defendant PNW Eats LLC was dissolved on or around March 24, 2022.  *Id.* ¶ 35.  Throughout plaintiffs' employment with defendants, defendants "supervised and assigned tasks to Plaintiffs and otherwise exercised control over the Plaintiffs' work," and "determined the rate and method of paying Plaintiffs and otherwise control[ed] Plaintiffs' employment conditions."  Am. Compl. ¶¶ 19–20, ECF 5.  Defendant Mendoza paid plaintiffs out of the corporate defendants' accounts and her personal checking account.  *Id.* ¶ 22.  Defendant Mendoza terminated plaintiffs after they complained about unpaid wages.  *Id.* ¶ 69.  The corporate defendants and defendant Mendoza received the benefit of plaintiffs' services and controlled the terms and conditions of plaintiffs' employment; therefore, each defendant qualifies as an "employer" under the FLSA and Oregon wage and hour laws, and is therefore jointly and severally liable for violations of these statutes.

## VI.    *Eitel* **Analysis**

Finally, the court must exercise its discretion in deciding whether to enter a default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In do so, the court considers the following factors under *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.

### A.  Factor One:  Possibility of Prejudice to Plaintiffs

In assessing this factor, courts have considered whether a plaintiff would be without recourse for recovery if the motion for default judgment is denied.  *See, e.g., Rubi v. Dynamic Change Inc.*, No. 3:17-CV-01531-HZ, 2019 WL 720977, at *2 (D. Or. Feb. 20, 2019), *J & J Sports Prods., Inc. v. Cardoze*, No. C 09–05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010); *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, defendants failed to respond to plaintiffs' December 15, 2021 demand letter for unpaid wages, which they received on or about December 18, 2021.  Am. Compl. ¶ 77, ECF 5. Thus, through the instant action, plaintiffs are pursuing the only method by which they may recover on their claims.

### B.  Factors Two and Three:  Merits of Claims and Sufficiency of Complaint

Upon entry of default, this court must take the well-pleaded factual allegations of the complaint as true.  *See Geddes*, 559 F.2d at 560 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("In reviewing a default judgment, this court must take the well-pleaded factual allegations of [the complaint] as true.").

As analyzed above, plaintiffs have established the elements of their claims through the facts in the complaint and the accompanying declarations and exhibits.

### C. Fourth Factor: Sum of Money at Stake

Under the fourth factor, "the court must consider the amount of money at stake in relation to the seriousness of [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176–77; *Board of Trustees of the Sheet Metal Workers v. Vigil*, No. C 07-01508 WHA, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("[D]efault judgment is disfavored if there were a large sum of money involved").

Here, the damages that plaintiffs seek, while not insignificant, are justified by the facts and the law.

### D. Fifth Factor: Possibility of Dispute Over Material Facts

In addressing the fifth factor, the court considers the possibility there is a dispute concerning material facts. As mentioned above, "[u]pon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 1177. Thus, "[t]he fifth factor . . . weighs in favor of default judgment when the claims in the complaint are well-pleaded." *Joe Hand Prods. v. Holmes*, No. 2:12–cv–00535–SU, 2015 WL 5144297, at *7 (D. Or. Aug. 31, 2015). Otherwise stated, "[b]ecause all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005).

Here, there is little to no possibility of a dispute over material facts because, again, the facts in the complaint are well-pleaded and establish the elements of plaintiffs' claims.

### E. Sixth Factor: Excusable Neglect

The sixth factor inquires into the possibility of excusable neglect. Before filing suit, plaintiffs' counsel sent a demand letter to defendant on December 15, 2021. Am. Compl. ¶ 77,

ECF 5.  Additionally, plaintiffs served the summons and original complaint, the amended

complaint, the motion for default judgment and related declarations and exhibits, the

supplemental motion for default judgment, and the motion for attorney's fees on defendants.

Decl. Service, ECF 4; Allen-Sailer Decl. ¶ 8, ECF 8; Certificate Service, ECF 24; Am.

Certificate Service, ECF 28.  Thus, defendants not only had notice of this lawsuit, but also the

pending motions.  There is no indication of excusable neglect.  *See Shanghai Automation

Instrument Co., Ltd. v. Kuei,* 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding no excusable

neglect because the defendants "were properly served with the Complaint, the notice of entry of

default, as well as the papers in support of the instant motion" for default judgment); *Fed. Home

Loan Mortg. Corp. v. Gonzalez*, No. 1:13-CV-02100-AWI-JL, 2015 WL 2358444, at *4 (E.D.

Cal. May 15, 2015), *report and recommendation adopted* 2015 WL 12681604 (E.D. Cal. June

16, 2015) (finding it unlikely that defendants' actions were the result of excusable neglect where

they were served with the summons and complaint, and the motion for default judgment).

### F.      Seventh Factor: Policy Favoring Decision on the Merits

Factor seven is "the strong policy underlying the Federal Rules of Civil Procedure

favoring decisions on the merits," specifically the policy that "[c]ases should be decided upon

their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  However, "this policy,

standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in

an action."  *Joe Hand Promotions, Inc. v. Machuca*, No. 2:13-cv-1228 GEB KJN, 2014 WL

1330749, at *6 (E.D. Cal. Mar. 31, 2014).  Rule 55 allows the court to terminate a case before

hearing the merits when a defendant fails to defend an action.  FED. R. CIV. P. 55.  A defendant's

failure to answer a complaint, "makes a decision on the merits impractical, if not impossible."

*PepsiCo*, 238 F. Supp. 2d at 1177.   "Thus, the preference to decide cases on the merits does not

preclude a court from granting default judgment." *PepsiCo,* 238 F. Supp. 2d at 1177 (internal

quotation omitted). In sum, it is defendants' failure to respond that prevents a decision on the

merits here. *See PepsiCo*, 238 F. Supp. 2d at 1177.

For the above reasons, the *Eitel* factors strongly weigh in favor of entering a default

judgment.

## VII.    Motion for Attorney's Fees and Costs

Plaintiffs also seek attorney's fees of $21,890 and litigation costs of $597. Allen-Sailer

Decl. ¶¶ 11, 13, ECF 23. Plaintiffs are entitled to reasonable attorney's fees and costs under the

FLSA, 29 U.S.C § 216(b), and O.R.S. 659A.885(1).

Attorney's fees are calculated using the lodestar method, i.e., by multiplying the number

of hours worked by a reasonable hourly rate. *See Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010)

(describing the lodestar approach as "the guiding light" for determining reasonable fees).

Reasonable hourly rates are "in line with those prevailing in the community for similar services

by lawyers of reasonably comparable skill, experience and reputation." *Gonzalez v. City of

Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 895

n.11 (1984)). For purposes of determining the prevailing market rate, the relevant community is

the "one in which the district court sits." *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir.

1991), *superseded by statute on other grounds as recognized by Davis v. City & County. of San

Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992). The Oregon State Bar Economic Survey sets

forth rates charged by Oregon attorneys, including rates specific to Portland, and serves as a

benchmark for assessing the reasonableness of attorney billing rates. *Precision Seed Cleaners v.

Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1244 (D. Or. 2013).

The court excludes hours "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking fees bears "the burden of documenting the appropriate hours expended in the litigation, and [is] required to submit evidence in support of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-rated Emps. of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (quoting *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1992).

The Ninth Circuit instructs district courts to consider the factors set out in *Kerr v. Screen Extras Guild, Inc.* in evaluating attorney's fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988) (citing 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied,* 425 U.S. 951 (1976)).

Plaintiffs request attorney's fees for work performed by their attorney, Bonnie Allen-Sailer, in the amount of $21,890, representing 64.4 hours at an hourly rate of $340. Allen-Sailer Decl. ¶ 9–10, ECF 23. Allen-Sailer has prepared an itemized log of time spent working on this case, Allen-Sailer Decl., Ex. 2, ECF 23-2, and has independently deducted 5.5 hours for duplicative, collaborative, and moot work. *Id.* at ¶ 9.

Allen-Sailer is proficient in Spanish and has nearly eight years of relevant experience representing low-wage workers, with an emphasis on working with Spanish-speaking immigrants, like plaintiffs. *See id.* at ¶ 4. Allen-Sailer notes that representation of individuals,

like plaintiffs, who do not speak English and are in situations of marginal employment, is particularly time-consuming. *Id.* at ¶ 12.

The most recent Oregon State Bar Economic Survey, published in 2017, lists the median rate for Portland attorneys with 7-9 years of experience as $280, and the rate for attorneys in the 75th percentile at $340. OREGON STATE BAR 2017 ECONOMIC SURVEY 39 (2017). Considering Allen-Sailer's specialized experience and language ability the requested hourly rate of $340 is reasonable. Moreover, the hours outlined in Allen-Sailer's log are reasonable given there are multiple plaintiffs and multiple claims, and the added complexity of representing individuals who do not speak English proficiently.

Plaintiffs seek litigation costs of $597, consisting of $195 for process server fees, and $402 for filing fees. Allen-Sailer Decl., Ex. 3, ECF 23-3. "Unless a federal statute, these rules or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). "Rule 54(d)(1) creates a presumption in favor of awarding costs to the prevailing party, and a district court has limited discretion to deny fees under the rule." *Goldberg v. Pac. Indem. Co.*, 627 F.3d 752, 758 (9th Cir. 2010). Thus, plaintiffs are entitled to $21,890 in attorney's fees and $597 in costs.

## RECOMMENDATIONS

Plaintiffs' Motion for Default Judgment (ECF 17) and Motion for Attorney Fees (ECF 22) should be GRANTED and judgment should be entered in the amount of $71,335.02 for Ednira Montoya, $80,192.86 for Jose Flores, $49,233.50 for Alejandro Montes, as well as $21,890 in attorney's fees and $597 in costs.

**SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Wednesday, December 28, 2022.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  November 28, 2022.

/s/ Youlee Yim You
_____
Youlee Yim You
United States Magistrate Judge
